

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6840 | **DATE** | 5/7/2003 |
| **CASE TITLE** | Prime Market Group vs. Maters Capital Mangement | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Based upon the arguments raised in the defendant's reply brief in support of its motion for summary judgment, and based on the parties' supplemental briefs, the Court grants summary judgment in the defendant's favor. Judgment is entered in favor of the defendant, Masters Capital Management LLC. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAY 1 2 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 43 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | OR6 | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRIME MARKETS GROUP, LLC, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 01 C 6840 |
| ) | |
| MASTERS CAPITAL MANAGEMENT, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is our second opinion on the summary judgment motion filed by the defendant, Masters Capital Management LLC. The facts of the case are set out in our first summary judgment opinion, *see Prime Markets Group, LLC v. Masters Capital Management, LLC*, No. 01 C 6840, 2003 WL 151932 (N.D. Ill. Jan. 22, 2003), but to summarize briefly, on September 1, 2000, MCM, through Salomon Smith Barney, placed an order to buy call options in Associates First Capital Corp. (abbreviated "AFS" on securities exchanges), a financial services company. MCM directed SSB to bid for up to 5000 AFS call option contracts with a strike price of $27.50 and an expiration date of September 16, 2000; SSB filled the order on September 1 and September 5. Also on September 1, SSB placed AFS on its "Watch List," a bulletin shared with only "a limited group of 'need to know' [SSB] employees . . . ." that suggests that something of importance is about to happen concerning the company. SSB's Sales & Trading Manual, September 1999, attached as Exhibit 2 to Plaintiffs' 56.1 Statement of Additional Facts. On September 6, 2000, Citigroup, which owned SSB, publicly announced that it was acquiring AFS.

Following the merger announcement, AFS stock, which had been trading at less than $28 on September 1 and September 5, climbed over $10 a share to close at $38.63. MCM exercised the options, sold the AFS shares at the higher price, and profited to the tune of about $5 million. The plaintiffs, all market makers for AFS derivative securities at the Chicago Board Options Exchange, sold the AFS options to MCM; they have sued MCM, alleging insider trading in connection with the AFS order.

MCM initially moved for summary judgment, arguing that the circumstances of the AFS transaction demonstrated as a matter of law that it had no intent to defraud; MCM argued that the evidence showed that the AFS trade was consistent with MCM's normal trading patterns. We declined to enter summary judgment on this basis because we found that the evidence, though consistent with MCM's claim in this regard, was not so one-sided that no jury could accept the plaintiffs' theory. *Prime Markets Group*, 2003 WL 151932, at *3. For example, although the evidence generally supported MCM's claim that Michael Masters, MCM's founder and manager, had acted on AFS stock because of information he obtained through publicly-available market research reports, we held that a jury could believe the plaintiffs' theory that if Masters had decided to buy AFS options based on the information in the research reports, he would have acted before September 1. *Id.* We also held that the evidence did not permit us to determine conclusively whether the AFS transaction was typical for MCM, because we could not tell if any of the other positions had been opened or purchased in the same month as they expired, a fact the plaintiffs suggested showed that the AFS trade was suspicious. *Id.* We found, in other words, that the plaintiffs had presented sufficient circumstantial evidence to defeat the entry of summary judgment on the particular basis urged by MCM. *Id.*

2

In our first ruling, we noted that MCM had offered in its reply brief an additional basis for granting summary judgment – namely, that the plaintiffs would be unable to prove the other elements of their tippee liability claim. But because the plaintiffs had had no opportunity to respond to this argument, we declined to consider it. We stated:

> [i]n its reply brief, MCM argued, for the first time, that the plaintiffs will be unable to prove the other elements of their tippee liability claim, i.e., that the disclosure of information from the tipper to Masters was improper and that Masters knew or should have known that the disclosure was improper. . . . To date, the plaintiffs have offered no evidence about who the tipper was or how the alleged tip was disclosed. But, given the limited basis on which MCM argued the case in its opening memorandum, plaintiffs would have had no reason to address these issues.

*Prime Markets Group*, 2003 WL 151932, at *3. We directed the parties to file supplemental briefs addressing whether we should enter summary judgment based on the lack of evidence to satisfy the other tippee liability elements, and they have now done so, making the issue ripe for consideration.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There must be more than "some metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586.

3

"In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "'[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.' An 'opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'" *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *Contemporary Mission v. United States Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)). *See also Collier v. City of Chicopee*, 158 F.3d 601, 604 (1st Cir. 1998) ("a summary judgment motion cannot be defeated by conclusory allegations, harsh invective, empty rhetoric, strained inferences, or unsupported conjecture.").

The plaintiffs allege that Masters is liable as a "tippee" for trading on the basis of a tip he received from an insider concerning the AFS/Citigroup merger. A "tippee's duty to disclose [information obtained from an insider] or abstain [from trading on the basis of that information] is derivative from that of the insider's duty"; "some tippees must assume an insider's duty to the shareholders not because they receive inside information, but rather because it has been made available to them *improperly*." *Dirks v. SEC*, 463 U.S. 646, 659-60 (1983). "[M]ere possession of [inside] information does not give rise to a duty to disclose or abstain." *Id.* at 656 n.15. "[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach." *Id.* at 660. "In determining whether a tippee is under an obligation to disclose

or abstain, it thus is necessary to determine whether the insider's 'tip' constituted a breach of the insider's fiduciary duty." *Id.* at 661. This, in turn, turns on "whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach." *Id.* at 662.

In our initial summary judgment opinion, we noted that the plaintiffs had offered no evidence concerning the identity of the tipper or the details of the disclosure, making it impossible for the Court to assess whether the alleged disclosure to Masters would have been improper or whether Masters should have known it was improper. Their supplemental brief offers no new evidence on these points. The plaintiffs argue that they are not required to identify the specific person or people who tipped Masters. Though this is correct, it does not help the plaintiffs; it does not relieve them of the responsibility of offering evidence from which a jury reasonably could find that Masters was tipped by someone who breached a duty and that Masters should have realized that he had received information improperly. In this regard, all plaintiffs offer is that Masters had a relationship with SSB and that some people at SSB knew about the AFS/Citigroup merger. That is not sufficient.

As we held in our first summary judgment opinion, the plaintiffs have offered evidence from which a jury reasonably could conclude that MCM's AFS trade was atypical, and conceivably this might be enough to permit a jury to find that Masters was tipped prior to making the AFS trade. But, as *Dirks* makes clear, that is not enough to prove a tippee liability claim. Possession of inside information, by itself, does not give rise to a duty to disclose or abstain; the duty arises, and liability may be imposed, only when the information is shared in breach of a

5

fiduciary duty. *Dirks*, 463 U.S. at 660, 656 n.15. Thus before a jury could find MCM liable for a violation of the securities laws, it would have to assess and determine whether the tipper's disclosure was improper.

The plaintiffs argue that Masters must have received information about the merger from someone at SSB. This is not only pure conjecture, it is unsupported by the evidence. The evidence establishes that some SSB employees knew about the merger: on or about September 1, SSB placed AFS on its Watch List (presumably because of the merger, though the evidence does not permit us to determine whether this was in fact the reason for the placement), and the Watch List was distributed to a limited group of "need to know" SSB employees. *See* SSB's Sales & Trading Manual, September 1999, attached as Exhibit 2 to Plaintiffs' 56.1 Statement of Additional Facts. But there is no evidence to suggest that Masters dealt with any of the SSB employees who received or even knew about the Watch List or that he was otherwise exposed to the information contained in it. On the contrary, Masters testified that he did not receive any information from anyone at SSB (or from anyone else for that matter) about AFS or the Citigroup merger, *see* Masters Deposition, p. 53, and that evidence is unrebutted. At his deposition, Masters identified the SSB employees with whom he had contact; presumably, the plaintiffs have conducted (or at least they have the opportunity to conduct) discovery to determine whether any of those employees had seen the Watch List or otherwise had information concerning the AFS/Citigroup merger. Because the plaintiffs have offered nothing to suggest that any of Masters' SSB contacts were in a position to disclose inside information, we can only conclude that any discovery on this point bore no fruit.

The plaintiffs suggest that the same circumstantial evidence used to show that the AFS

trade was atypical can also support the allegation that Masters was tipped by someone at SSB who breached a fiduciary duty in making the tip. Not so. At most, that evidence tends to show only that Masters had information about the merger; it says nothing about who gave it to him. The inferences required to link SSB to the tip simply have no support in the record.

In sum, the plaintiffs have no evidence that whoever tipped Masters did so in breach of his or her fiduciary duty, and they have no evidence that MCM knew or should have known that any information it had concerning AFS was obtained or shared in violation of any fiduciary duty. Without evidence to support these points, a jury could not reasonably conclude that MCM violated the securities laws, *see Dirks*, 463 U.S. at 660; *SEC v. Maio*, 51 F.3d 623, 631-32 (7th Cir. 1995), and summary judgment in MCM's favor is therefore appropriate.

## Conclusion

Based upon the arguments raised in the defendant's reply brief in support of its motion for summary judgment, and based on the parties' supplemental briefs, the Court grants summary judgment in the defendant's favor. The Clerk is directed to enter judgment in favor of the defendant, Masters Capital Management LLC.

Date: May 7, 2003

MATTHEW F. KENNELLY
United States District Judge

7